Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000656
12-MAR-2019
09:42 AM

NO. CAAP-17-0000656


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellant, v.
RODNEY ROBERT RODRIGUES, JR., Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 3CPC-17-0000334)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, and Fujise, J.
with Leonard, J., dissenting)

Plaintiff-Appellant State of Hawai'i (State) appeals from the Circuit Court of the Third Circuit's (Circuit Court) August 28, 2017 Findings of Fact and Conclusions of Law (Order) granting Defendant-Appellee Rodney Robert Rodrigues, Jr.'s (Rodrigues) Motion to Suppress Evidence and for Return of Property (Motion to Suppress).[1]

On appeal, the State challenges the Order, contending that the Circuit Court clearly erred by finding, in conclusions of law 9 and 11, that the search warrant did not describe with particularity the area to be searched, and that the affidavit and search warrant did not authorize the search of the lower-level studio.  We agree with the State and vacate the Circuit Court's Order.

I.

In May 2017, Hawai'i County Police Department Officer Marco Segobia (Officer Segobia) prepared an Affidavit for Search Warrant (Affidavit) to search Rodrigues and Rodrigues's residence

_____

[1]    The Honorable Henry T. Nakamoto presided.

at 74-5166 Puuhalo Street in Kailua-Kona for methamphetamine, related paraphernalia, personal property, and cash. The Affidavit explained that a confidential informant (CI) had disclosed he had witnessed Rodrigues sell methamphetamine on more than twenty occasions, that Rodrigues "distributes 'ice' from his residence, located at 74-5166 Puuhalo Street" and, under Officer Segobia's supervision, had conducted a controlled purchase of methamphetamine from Rodrigues at Rodrigues's residence within the month of May 2017. Officer Segobia averred that he had observed the CI enter the residence at 74-5166 Puuhalo Street to conduct the controlled purchase in what the CI identified as Rodrigues's residence, and described the path driven to reach the Puuhalo Street residence.

Officer Segobia also attached a copy of Rodrigues's "Full RAP Sheet" and a "Hawai'i County Real Property Inquiry" (Inquiry) which showed that the fee owner of the residence at 74-5166 Puuhalo Street was Yolanda M. Rodrigues. This Inquiry indicated the structure consisted of three bedrooms and two baths.

The search warrant was granted on May 11, 2017 and executed by Officer Segobia. The search yielded, among other things, methamphetamine and drug paraphernalia, and Rodrigues was charged with nine drug and drug paraphernalia offenses.

On July 2, 2017, Rodrigues filed his Motion to Suppress the evidence discovered during the search and asked for the return of the three vehicles and cash seized. Rodrigues challenged the validity of the search on three grounds: (1) Lack of probable cause to justify issuance of the search warrant for the residence as described in the warrant; (2) Failure of the warrant to describe the place to be seized with sufficient particularity; and (3) Search exceeding the scope of the warrant. In a nutshell, Rodrigues's argument was,

> A search warrant for an apartment house or hotel or other multiple-occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately. State v. Anderson, 84 [Hawai'i] 462, 935 P.2d 1007 (1997) *citing* 2 Wayne R. LaFave, Search and Seizure § 4.5(b) at 526-29 (3d ed. 1996).

As such the search of the totally separate ohana unit below the residence is beyond the scope of the warrant and therefore invalid. Any evidence obtained from the unlawful search of the separate studio dwelling must be suppressed.

Officer Segobia, who prepared the Affidavit and executed the search warrant, testified at the hearing on the Motion to Suppress that he worked with the CI who told him Rodrigues was selling drugs from his residence and who conducted the controlled purchase from Rodrigues. The residence was on the corner of Puuhalo and Konalani Streets; the main entrance and mailbox for the residence was on Puuhalo Street. Officer Segobia observed the controlled purchase by watching the CI walk along the side of the house "downstairs" and enter through a door to the downstairs unit of the house. This door opened into a storage unit; access to the bedroom was through and to the right of this storage unit. Officer Segobia denied that the downstairs unit was an "ohana" unit and testified that this downstairs unit was part of the house, but the CI could not give Officer Segobia specific details about the interior.

Prior to the execution of the search warrant, Officer Segobia had also spoken to Rodrigues's brother-in-law, Nick Ah Nee (Ah Nee), who once lived in the same residence. Ah Nee told Officer Segobia that he and his wife (Rodrigues's sister), Rodrigues's mother, Yolanda Rodrigues (Yolanda), and Rodrigues all had lived in the house at the same time and "it appeared that everybody would have access to other people's areas." Ah Nee also told Officer Segobia that Rodrigues's mother lived in the residence but was away, living with her husband on Maui.

On the day the warrant was executed, Officer Segobia observed at least a dozen vehicles parked on the driveway, roadway and the property; the majority were parked on "[t]he makai south portion of the residence where the defendant lived." Vehicles belonging to Rodrigues were parked both on the top portion of the residence as well as the makai portion. Three vehicles registered to Rodrigues, parked on the top portion of the property, were seized. The officers confined their search to this downstairs-makai-south portion of the residence, although

Ah Nee showed up during the search and offered to open the upstairs unit with a key that he had.

Yolanda also testified. She was the owner of the residence in question and clarified that there were three bedrooms and two baths upstairs and a "studio" unit, with one bedroom, a kitchen and a bathroom, downstairs. In May 2017, she was living in the upstairs part of the residence, while Rodrigues lived in the downstairs unit and paid her $1000 per month for rent. Prior to that time, she lived in the downstairs unit while her daughter and daughter's family lived upstairs; when her daughter's family moved out, she moved upstairs and Rodrigues moved downstairs. The door to the downstairs unit had a lock; she had a key to this lock in May and at the time of her testimony. She also testified that the kitchen and bathrooms for the upstairs and downstairs units were not shared.

The parties submitted documents into evidence including, among other things, copies of the Affidavit and attachments, search warrant, and return on search warrant as well as photographs of the residence.

The color photographs depict, among other things, the residence from the outside, from both Puuhalo and Konalani Streets. The Rodrigues residence is one part of a duplex, assigned the number 74-5166. Portions of the residence are constructed with different colors and types of wood. Entrance to the upper part of the residence appears to be through an open garage or carport; part of the upper part of the building is obscured from the street by a wooden fence. The upper part of the residence appears to be light tan in appearance. The rear of the upper part appears to be constructed of a different kind of wood than the rest and of a slightly different color. The lower portion of the building is not visible from the front--the Puuhalo Street side--of the building, but one can see the structure has a lower floor--the parameter of which is roughly even with the upper portion of the structure--from the Konalani Street side of the building. As one faces the building from Konalani Street, an addition extends from the left side of this lower portion that appears to be attached to the rest of the

structure; it has its own roof, window, and door facing Konalani Street. It was into this door that Officer Segobia saw the CI enter to conduct the controlled purchase of drugs from Rodrigues.

In its Order, the Circuit Court found and concluded, in relevant part,

2. The affidavit For Search Warrant requests the search of:

"A residence located within the County and State of Hawaii and within the District of Kona. Your affiant describes the residence as a two story light colored wood siding structure with white colored rooftop. The residence is located at the North West Corner of the intersection of Konalani Street and Puuhalo Street. Fronting just east of the residence is a wood post with two (2) mailboxes affixed side by side, the mail box on the left has black colored numbers "74 5166", the mailbox on the right has the black colored numbers "74 5164". The property and the residence can be located by traveling east on Konalani Street from Palani Road, continue approximately 0.4 miles, then execute a left turn onto Puuhalo Street, the residence is located approximately 33 feet on the left hand side of Puuhalo Street. Your affiant checked the Hawaii County Property Tax website and located the residence, which is owned by Yolanda M. RODRIGUES of address 74-5166 Puuhalo Street, Kailua-Kona, Hawaii 96740. Tax Map Parcel Number 7401200100000; [sic] To include but not limited to all rooms, and other parts therein, the patio or lanai of such unit, and any attached garages and carport, attached storage rooms, garbage cans and containers located within."

. . . .

5. The Affidavit does not mention the separate downstairs residential unit.

6. The Affidavit does not mention an entrance on the lower story and Konalani Street Side of residence.

7. On May 11, 2017, Officer Segobia obtained search warrant 2017-079K permitting the search of

"A residence and property located within the County and State of Hawai['] i and within the District of Kona. Your affiant describes the residence as a two story light colored wood siding structure with white colored rooftop. The residence is located at the North West corner of the intersection of Konalani Street and Puuhalo Street in Kailua-Kona. Fronting just east of the residence is a wood post with two (2) mailboxes affixed side by side, the mailbox on the left has black colored numbers "74 5166", the mail box on the right has the black colored numbers "74 5164". The property and residence can be located by traveling east on Konalani Street from Palani Road, continue approximately 0.4 miles, then execute a left turn onto Puuhalo Street, the residence is located approximately 33 feet on the left hand side of Puuhalo Street. . . To include but not limited to all rooms, and other parts therein, the patio or lanai of such unit, and any attached garages ad [sic] carport, attached

5

storage rooms, garbage cans and containers located within."

Ex. B.

8.    [Officer Segobia] testified on direct examination that "where Mr. Rodney Rodrigues was living is a downstairs unit of the residence located on, I guess, the south portion of the residence. If you are coming up Konalani Street, there's an entrance right there along the side portion of the house. So I observed the CI walk downstairs and go to the downstairs unit." (Transcript of Proceedings for August 9, 2017 ("Tr.") page 9)

9.    Officer Segobia testified the downstairs unit is separate from the upstairs unit with its own bedroom, bathroom and kitchen. (Tr. 12.)

. . . .

12.   Officer Segobia testified he did not search the three bedroom, two bathroom residence with light colored siding and white rooftop. (Tr. 11.)

13.   Officer Segobia testified that he had been aware at one time that the house had been inhabited by multiple individuals. Officer Segobia was personally acquainted with the previous resident and had visited the house. (Tr. 22.)

14.   Officer Segobia testified that in his Affidavit he "didn't want to specify too much without knowing a hundred percent." He further testified that he "didn't want to get too specific" in his affidavit "since the CI could not confirm the information." (Tr. 21.)

15.   The execution of the search warrant yielded various paraphernalia, controlled substances, personal property and currency as described in the Return of Search Warrant admitted into evidence as Defendant's Exhibit C. Ex C.

. . . .

18.   Defendant's mother, Yolanda Rodrigues, testified that Defendant rented the downstairs unit. She described the downstairs unit as a studio that is not accessible from the upstairs unit. It has its own door to the outside and the door has a lock. The studio has its own bathroom, bedroom and kitchen. She has the keys to unit. [sic] But she considers herself the landlord. She testiifed Defendant pays her rent of $1000 per month. There are no shared areas between the upstairs and downstairs unit. (Tr. 36-38, 40.)

19.   Defendant had a reasonable expectation of privacy in the downstairs studio unit.

. . . .

6

CONCLUSIONS OF LAW

. . . .

3.  For an affidavit to support a finding of probable cause, the affidavit must set forth some of the underlying circumstances from which the police concluded that the objects sought to be recovered are where they claimed they are, and must disclose some of the underlying reasons from which the affiant concluded that the information was reliable. State v. Sepa, 72 Haw. 1451, 808 P.2d 848 (1991). The failure of the affidavit to establish probable cause will render the warrant invalid and the evidence recovered as result thereof inadmissible at trial. Monick v. State, 64 Haw 399, 641 P.3d 1341 (1982); State v. Knight, 63 Haw. 90, 621 P.2d 370 (1980).

4.  Where a search warrant is directed at a multiple occupancy dwelling or multiple-office building, the warrant will generally be held invalid unless it describes the particular room or sub-unit to be searched with sufficient definiteness to preclude a search of other units in the building occupied by innocent persons. State v. Matsunaga, 82 [Hawai'i] 162, 920 P.3d 376 ([App.] 1996).

. . . .

9.  The Search Warrant in this case describes with particularity the upstairs residence located at 74-5166 Puuhalo Street. It does not describe at all the separate studio unit located downstairs. The Affidavit describes very carefully how one must travel to the upstairs residence, what the upstairs residence looks like from the outside, as well as the number of bedrooms and bathrooms in the upstairs unit.

10. Nothing in the Affidavit describes the studio unit on the bottom floor despite Officer Segobia having ample facts about this downstairs unit, its separate entrance and identifying characteristics.

11. The Affidavit and the search warrant simply do not describe and therefore do not authorize the search of the separate downstairs studio unit.

. . . .

13. The Affidavit For Search warrant in this case, sets forth facts sufficient to issue a warrant for the upstairs unit of 74-5166 Puuhalo Street and to justify a search of that unit only. It does not set forth any facts sufficient to justify a warrant for and/or a search of the separate studio unit.

14. "A determination of whether a search warrant complies with constitutional particularity requirement must be made on a case-by-case basis, taking into account all of the surrounding facts and circumstances. State v. Kealoha, 62 Haw. 166 at 170-171, 613 P.2d [645] at 648. The cornerstone of such a determination is "the language of the warrant itself." [Id.] at 171, 613 P.2d at 648. Also relevant to this decision are the executing officer's prior knowledge as to the place intended to be searched, United States v. Goodman, 312 F.Supp. [556] at [558], . . . and the description of

the place to be searched appearing in the probable cause affidavit in support of search warrant. State v. Bisaccia, 58 N.J. 586, 279 A.2d 675, 678 (N.J. 1971)." State v. Masunaga, 82 [Hawai'i] 162 at 167; 920 P.2d 376 at 381 ([App.] 1996)

15.  At the time he applied for the warrant, Officer Segobia knew or should have known that the residence was a multi-unit dwelling with more than one occupant. Officer Segobia knew the previous resident, and had been to the residence.

16.  The outward appearance of the residence suggests that the downstairs is a separate unit. The downstairs has a separate entrance, is painted a different color with a different type of siding, and is accessed from Konalani Street, rather than Puuhalo Street.

17.  The Affidavit and search warrant in this case failed to describe with particularity the place to be searched, despite the officer having sufficient information to do so.

18.  The search in this case exceeded the scope of the warrant, that described with particularity only the upstairs unit of residence, not the downstairs studio.

19.  There is no probable cause based on the facts set forth in the Affidavit in support of the search warrant to justify a search of the downstairs studio unit.

The State timely appealed from the Order.

## II.

This case turns on the application of rules governing "multiple occupancy" search warrants, but we begin with the general proposition that

> Under the safeguards of the state and federal constitutions, no search warrants shall issue except upon a finding of probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. The constitutional requirement that the warrant must describe with particularity the place to be searched is to limit the police as to where they can search, for otherwise the constitutional protection against warrantless searches is meaningless.

State v. Woolsey, 71 Haw. 638, 640, 802 P.2d 478, 479 (1990) (footnote omitted). The determination of whether an application for a search warrant was sufficient to support a finding of probable cause must be made on a case-by-case basis, taking into account all the surrounding circumstances, State v. Kealoha, 62 Haw. 166, 170-71, 613 P.2d 645, 648 (1980), including the executing officer's prior knowledge as to the place to be searched and the description of the place contained in the

8

affidavit in support of the application.  State v. Matsunaga, 82 Hawai'i 162, 167, 920 P.2d 376, 381 (App. 1996).

If a structure is a multiple occupancy building, then a search warrant that does not sufficiently describe the subunit to be searched so as to preclude a search of one or more of the other subunits is generally held invalid because the fourth amendment requires a warrant to particularly describe the place to be searched.  2 Wayne R. LaFave, Search and Seizure § 4.5(b) (5th ed.); see also Anderson, 84 Hawai'i at 468, 935 P.2d at 1013 (reviewing a multiple occupancy warrant under article I, section 7 of the Hawai'i Constitution).

> Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard.  A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite and firm conviction that a mistake has been made.  The circuit court's conclusions of law are reviewed under the right/wrong standard.  Furthermore, . . . the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged.  The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.

State v. Balberdi, 90 Hawai'i 16, 20-21, 975 P.2d 773, 777-78 (App. 1999) (quoting Anderson, 84 Hawai'i at 466-67, 935 P.2d at 1011-12).

The Circuit Court based its decision, in major part, on its implicit factual determination that the residence subject to the search at issue here was a multiple occupancy dwelling.  While no precise definition of a multiple occupancy building has been established in Hawai'i, two cases involving the concept as it applies to the issuance of search warrants have been decided in this jurisdiction.

In State v. Woolsey, 71 Haw. 638, 802 P.2d 478 (1990), the Hawai'i Supreme Court reviewed a search warrant challenged as overbroad where the affidavit in support of the warrant specified the exact bedroom where the drug transactions occurred but where the warrant authorized a search of the entire residence.  Specifically, undercover purchases of cocaine were conducted by a confidential informant with another individual, not Woolsey, from

her bedroom within the residence. Woolsey maintained another, separate bedroom, within the residence. Upon searching Woolsey's bedroom, the officers found a semi-automatic pistol, ammunition, marijuana, and marijuana literature. 71 Haw. at 639-40, 802 P.2d at 479.

The Woolsey court observed that, where drug dealing was an ongoing operation, it was reasonable to believe that drug paraphernalia, records, and proceeds were present in the residence and, where all occupants of the house had access to all parts of the residence, it was reasonable to believe drugs could be found in any part of the residence. Consequently, the court held that the warrant directing the search of the entire residence was reasonable, "especially in the absence of any evidence that Appellant was entitled to an expectation of privacy from the other occupants in areas in which the weapons were discovered and seized." 71 Haw. at 641, 802 P.2d at 479. The court further noted that, "[c]ourts have held that in 'multiple occupancy dwellings' in which several persons or families share common living areas but have separate bedrooms a single warrant authorizing the search of the entire premises is valid and reasonable." Id.

In Anderson, the Hawai'i Supreme Court reviewed the suppression of evidence obtained through a warrant to search the residence of two males. 84 Hawai'i at 464-65, 935 P.2d at 1009. The structure consisted of one story with two entrances, but appeared to be "one dwelling." Id., at 465, 935 P.2d at 1010. Upon execution of the warrant, officers came upon a locked bedroom; the officers announced they had a warrant, and a third male, Anderson, who had been renting the room for about a year but who had not been named in the warrant, opened the bedroom door. Id. at 466, 935 P.2d at 1011. A search of Anderson's bedroom yielded a revolver, ammunition, drugs, and paraphernalia. Id. The trial court suppressed this evidence based on its conclusion that the warrant did not authorize a search of Anderson's bedroom as Anderson "had an expectation of privacy." Id. at 465-66, 935 P.2d at 1010-11.

In addressing Anderson's argument that the warrant was for a multiple occupancy dwelling and did not sufficiently describe the place to be searched, the Anderson court acknowledged the general rule that a warrant authorizing the search of a multiple occupancy dwelling will be declared invalid if it does not describe the particular subunit to be searched. Id. at 468, 935 P.2d at 1013. However, the court also observed that some jurisdictions recognized an exception to this rule, where the outward appearance of the dwelling was of a single occupancy structure, and neither the affiant nor the executing officers knew or had reason to know of its multiple occupancy nature prior to its execution. Id. (quoting 2 Wayne R. LaFave, Search and Seizure § 4.5(b), at 526-29 (3d ed. 1996)).

The court distinguished Woolsey, which did not involve a locked bedroom door, and noted, in any event,

> a locked bedroom door does not, by itself, automatically elevate the bedroom to the status of a separate residential unit. United States v. Kyles, 40 F.3d 519, 524 (2d Cir. 1994) (A statement by the defendants' mother, telling police officers "that [the defendant] was the only person with a key to the [bed]room did not, by itself elevate the bedroom to the status of a separate residential unit."), cert. denied, _U.S._, 115 S. Ct. 1419, 131 L. Ed. 2d 302 (1995); People v. Siegwarth, 285 Ill. App. 3d 739, 220 Ill. Dec. 965, 968, 674 N.E.2d 508, 511 (1996) ("[T]he mere fact that defendant's bedroom was padlocked . . . does not mean that the house in fact contained multiple living units."); State v. Hymer, 400 So. 2d 637, 639 (La. 1981) (holding that a warrant authorizing the search [of] a multiple occupancy dwelling that a defendant shared with his sister and brother-in-law also authorized the search [of] the defendant's locked bedroom, because, among other things, the defendant failed to adduce sufficient "evidence that the room was private or inaccessible to his sister and brother-in-law."). Bedroom door locks are not uncommon in multiple occupancy dwellings or, for that matter, in single occupancy dwellings, and Anderson failed to prove by a preponderance of the evidence that, among other things, he was occupying a bedroom that was secured against access by the other occupants in the dwelling[.]

Id. at 469, 935 P.2d at 1014.

Similarly, the evidence presented here did not establish that Rodrigues maintained exclusive access to the lower unit. First and foremost, there was no testimony that this was the case. Rather, the evidence supported the view that the Puuhalo residence was occupied by members of the same family, although they apparently moved, over time, where they stayed in the residence. These family members had access to the upper and

11

lower parts of the structure and, although the external door to the lower unit had a lock, Rodrigues's mother also had a key to that door before, during and after the time the warrant was executed.

Furthermore, the structure[2] had the outward appearance of community occupation. It had one address and one mailbox which Rodrigues and his mother shared. There was no additional doorbell for the lower unit. Public real property tax records did not indicate there was an additional kitchen, bath or bedroom in the lower unit, nor did they indicate this was a separate dwelling unit at all. The photographs of the property do not indicate it is comprised of separate units. An examination of the photographs--even from the Konalani Street side--depict the bedroom, bath and kitchen as directly beneath the upper level living area and appear to be a part of the overall structure. The exterior door to the lower unit is in a wall that extends out from the overall structure and appears to be part of an addition that does not contain the bedroom, bath and kitchen of the lower unit and is more consistent with the police officer's "storage room" characterization. See State v. Boyles, 356 P.3d 687, 694 (Utah Ct. App. 2015) (discussing various facts considered by courts in assessing multiple occupancy, including separate entrances, separate visible doorbells, mailboxes, speaking tubes, name plates, or apartment numbers and whether other occupants have access.).

Nor are we dissuaded by the failure of Officer Segobia, who drafted the warrant application, to more specifically describe the internal structure of this residence. The application and search warrant itself described the structure as a "two story light colored wood siding structure with white colored rooftop." While it is true that he had been inside the lower unit at one time, his knowledge of its particulars was not extensive and he thought, although was not sure, that there was an internal stair that had been blocked by the time the warrant

---

[2] In his affidavit in support of the search warrant, Officer Segobia explicitly described the Rodrigues residence as separate from the adjoining residence as identified by a different street address and mailbox and the warrant was sought for the Rodrigues residence only.

was executed. Furthermore, the CI that participated in the controlled drug transaction could not give specifics regarding the internal structure nor could he confirm whether an internal staircase existed at the time. Finally, that the search warrant also authorized the search of Rodrigues himself and that Officer Segobia had information that all of the family members had access to the entire house, supported the scope of this search warrant as authorizing the search of the entire structure.[3]

Based on the totality of the evidence presented, the Circuit Court's implicit finding that the Puuhalo residence was a multiple occupancy dwelling with separate units was clearly erroneous based on the information Officer Segobia had when seeking the search warrant. Consequently, it was error to conclude that the warrant was deficient for the failure to specifically describe the lower unit and to suppress the evidence seized under the authority of that warrant.[4]

Therefore, the Circuit Court of the Third Circuit's August 28, 2017 Findings of Fact and Conclusions of Law is vacated and this case is remanded for further proceedings.

DATED: Honolulu, Hawai'i, March 12, 2019.

On the briefs:

Kauanoe A. Jackson,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellant.

Chief Judge

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellee.

Associate Judge

---

[3] We note no evidence that Rodrigues was present at the residence when the warrant was executed.

[4] Although not bearing on the issue of whether the warrant was sufficiently specific, we note that the police in this case limited themselves to searching the lower unit because that was the area they had observed the CI enter. Some courts have held that the failure to describe the subunit to be searched was cured or ameliorated by limiting the actual search to the subject subunit. United States v. Yablonski, 8 F.2d 318 (S.D.N.Y. 1925); United States v. Poppit, 227 F. Supp. 73 (D. Del. 1964); People v. Hartfield, 237 N.E.2d 193 (Ill. App. Ct. 1968).